HMG:USAO#2016R00783

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. RDB-18-357** |
| v. | (Conspiracy; 18 U.S.C. § 371) |
| **MOHAMMAD QAMAR,** | |
| Defendant. | |

...oOo...

## INFORMATION

### COUNT ONE

The United States Attorney for the District of Maryland charges:

### INTRODUCTION

At times material to this information:

1. Defendant Mohammad Qamar ("Qamar") lived in New York, New York.

2. Qamar owned and operated A Deel LLC, d/b/a Decker Mart ("Decker"), which was a convenience store located in Baltimore, Maryland.

3. The Food Stamp Act of 1977, which was later renamed the Supplemental Nutrition Assistance Program ("SNAP"), used federal tax dollars to subsidize low-income households, and permit those households to obtain a more nutritious diet by increasing the food purchasing power of eligible persons. SNAP was jointly administered by the United States Department of Agriculture ("USDA"), Food and Nutrition Service ("FNS"), together with various state agencies.

4. Title 7 of the Code of Federal Regulations, Section 278.2(a), prohibited an authorized retail food store from accepting food stamp coupons in exchange for cash. Further, Title 7 of the Code of Federal Regulations, Sections 278.2(a) and (h) provided that food stamp coupons may "only be accepted from eligible households or the households' authorized representative, and only in exchange for eligible food." Title 7 of the Code of Federal Regulations, Section 271.2 provided that food stamp coupons included "an electronic benefit transfer card or personal identification number issued pursuant to the provisions of the Food Stamp Act of 1977, as amended, for the purchase of eligible food."

5. In Maryland, SNAP was administered by the Maryland Department of Human Resources ("DHR") and was known as the Food Supplement Program ("FSP"). Maryland implemented FSP, funded by SNAP, through an Electronic Benefits Transfer ("EBT") system. FSP customers were issued plastic EBT Cards, which contained an embedded magnetic stripe that stored basic information required for food purchases. Retailers approved by FNS to accept SNAP were assigned an FNS authorization number and, in some cases, were provided with a point of sale ("POS") device to access the electronic funds allocated to customer's EBT Cards. POS devices in Maryland communicated with the central Maryland EBT database, which was located in Texas, to debit a customer's available SNAP benefit balance for the value of eligible food items purchased.

6. In order to participate in the SNAP as an authorized retailer, a business submitted FNS Form 252, Food Stamp Program Application for Stores to FNS. As part of that application, the store owner/manager certified that they understood and agreed that "trading cash for Supplemental Nutrition Assistance Program benefits" was a "violation" of SNAP regulations.

2

7. In order to receive SNAP reimbursements, authorized retailers were required to establish a single authorized bank account into which EBT benefits from legitimate food stamp transactions would be deposited.

## THE CONSPIRACY AND ITS OBJECTS

8. Beginning in or about October 2015 and continuing until in or about August 2016, in the District of Maryland and elsewhere,

### MOHAMMAD QAMAR,

the defendant herein, did combine, conspire, confederate and agree with at least one other person to knowingly and willingly execute a scheme and artifice to defraud, and to obtain more than $250,000 from the U.S. Department of Agriculture and its SNAP program, by means of materially false and fraudulent representations, and for the purpose of executing the scheme and artifice to defraud, knowingly transmitted and caused to be transmitted, by means of wire communication in interstate commerce, certain writings, signals, pictures and sounds.

## METHODS AND MEANS

9. It was part of the conspiracy that **QAMAR** applied to participate in the SNAP program.

10. It was further part of the conspiracy that USDA authorized Decker and **QAMAR** to participate in the SNAP program based on documents submitted by **QAMAR**.

11. It was further part of the conspiracy that **QAMAR**, a relative of **QAMAR**, and an employee of Decker used bank accounts and engaged in financial transactions.

12. It was further part of the conspiracy that **QAMAR** and his employee caused EBT POS devices in Maryland to electronically transmit interstate requests to authorize

3

transactions and deduct amounts from EBT customers' available balances for unauthorized and unlawful purposes.

13. It was further part of the conspiracy that **QAMAR** and others caused the Maryland EBT System (through the EBT contractor) to electronically transmit an interstate signal that authorized electronic payment to the bank account of the convenience store. Once the transaction was approved, information flowed back to the POS terminal confirming that the cardholder's account had been successfully debited.

14. It was part of the conspiracy that **QAMAR**'s employee debited and caused to be debited funds off an EBT card in multiple transactions to disguise the fraudulent nature of the transactions.

15. It was part of the conspiracy that **QAMAR** and his employee falsely and fraudulently redeemed and caused to be redeemed from the United States government the full amount of the EBT food stamp benefits charged on the EBT cards and caused this money to be deposited into bank accounts controlled by **QAMAR** and his relative.

### Overt Acts

16. In furtherance of the conspiracy and scheme to defraud and to affect the objects thereof, at least one of the co-conspirators committed and caused to be committed, in the District of Maryland and elsewhere, at least one of the following overt acts:

    a. On or about December 6, 2015, **QAMAR's** employee conducted two separate SNAP transactions totaling $399.70 at Decker, on an EBT card ending in 2395, which caused an interstate wire communication, in exchange for cash worth approximately half the

value of the transactions, approximately $200.

      b.      On or about April 12, 2016, at approximately 2:49 p.m., **QAMAR's** employee conducted a SNAP transaction of $311.79 at Decker, on an EBT card number ending in 0995, which caused an interstate wire communication, in exchange for cash worth approximately half the value of the transaction, approximately $155.

      c.      On or about August 15, 2016 at approximately 3:15 p.m., **QAMAR's** employee conducted a SNAP transaction of $299.63 at Decker, on an EBT card number ending in 2521, which caused an interstate wire communication, in exchange for cash worth approximately half the value of the transaction, approximately $150.

      d.      On or about August 16, 2016 at approximately 11:02 a.m., **QAMAR's** employee conducted a SNAP transaction of $253.27 at Decker, on an EBT card number ending in 3856, which caused an interstate wire communication, in exchange for cash worth approximately half the value of the transaction, approximately $125.

      e.      On or about August 21, 2016 at approximately 2:05 p.m., **QAMAR's** employee conducted a SNAP transaction of $239.53 at Decker, on an EBT card number ending in 4961, which caused an interstate wire communication, in exchange for cash worth approximately half the value of the transaction, approximately $120.

18 U.S.C. § 371

6-29-18
Date

ROBERT K. HUR
UNITED STATES ATTORNEY